USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 08/24/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAROLINE SANCHEZ, et al.,

    Plaintiffs,

-against-

SALSA CON FUEGO, INC., et al.,

    Defendants.

16-CV-473 (RJS) (BCM)

**MEMORANDUM AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiffs Caroline Sanchez, Lisa Pabon, Samantha Mori, Angely Fernandez, and opt-in plaintiff Kristina Evans, who are all former bartenders and servers at Salsa Con Fuego restaurant, bring this action under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law (NYLL) §§ 190 *et seq.* and 650 *et seq.*, on behalf of themselves and other similarly situated persons, alleging that defendants Salsa Con Fuego Inc. (Salsa Con Fuego), Salsa Con Fuego Management LLC (SCF Management), SCF Cedar LLC (SCF Cedar), Joseph Nieves, John Mangan, and John Does #1–10 violated the minimum wage, overtime, tip-pooling, spread-of-hours, and payroll notice provisions of the FLSA and NYLL. *See* Compl. (Dkt. No. 1) ¶¶ 1–3.[1]

Now before the Court is plaintiffs' motion for an order: (1) granting conditional certification of plaintiffs' FLSA claims as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of all tip-eligible employees who were employed by defendants in New York at any time since January 21, 2013; (2) approving plaintiffs' proposed notice and consent forms, to be sent to

---

[1] The first and second causes of action in the Complaint are brought under the FLSA. The third, fourth, fifth, sixth, and seventh causes of action are brought under the NYLL.

potential collective action members; (3) directing defendants to provide the names, last known addresses, telephone numbers, and email addresses of all potential collective action members; (4) approving plaintiffs' proposed deadline reminder notice, also to be mailed to potential collective action members; and (5) directing defendants to post notice of this lawsuit at Salsa Con Fuego. *See* Pl. Mem. of Law (Dkt. No. 29), at 2–3; Pl. Proposed Order (Dkt. No. 28-1) ¶¶ 1–7. The motion is "within the scope of my authority under 28 U.S.C. § 636(b)(1)(A)." *Nahar v. Dozen Bagels Co. Inc.*, 2015 WL 6207076, at *1 (S.D.N.Y. Oct. 20, 2015) (citing *Iriarte v. Redwood Deli and Catering, Inc.*, 2008 WL 2622929, at *1 n.1 (E.D.N.Y. June 30, 3008)); *accord Warman v. Am. Nat'l Standards Inst.*, 2016 WL 3647604, at *1 n.1 (S.D.N.Y. June 27, 2016) ("Motions for conditional certification of a collective action under the FLSA are non-dispositive.") (citing *Bijoux v. Amerigroup New York, LLC*, 2015 WL 5444944, at *1 (E.D.N.Y. Sept. 15, 2015)).

For the reasons set forth below, plaintiffs' motion is GRANTED as to all bartenders, servers, and bussers employed at Salsa Con Fuego since January 21, 2013.

## BACKGROUND

### I. Factual Background

Salsa Con Fuego is a restaurant and lounge located at 2297 Cedar Avenue, Bronx, New York. Compl. ¶¶ 1, 14.[2] Salsa Con Fuego is open seven days per week, serving dinner every day and brunch on Sunday. *Id.* ¶ 44. Plaintiffs were employed by Salsa Con Fuego as servers or

---

[2] At the conditional certification stage, courts "should not weigh the merits of the underlying claims," *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013) (citing *Lynch v. United Servs. Auto Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007), and should not "resolve factual disputes, decide substantial issues going to the ultimate merits, or make credibility determinations." *Jackson v. Bloomberg, L.P.*, 2014 WL 1088001, at *3 (S.D.N.Y. Mar. 19, 2014) (internal quotation marks omitted). Accordingly, for the purposes of resolving the collective certification motion, I treat the facts alleged by plaintiffs as true. *See Cortes v. New Creators, Inc.*, 2015 WL 7076009, at *1 n.1 (S.D.N.Y. Nov. 12, 2015).

bartenders for various periods of time between August 2013 and October 2015. *See id.* ¶¶ 51–64; Decl. of Kristina Evans (Dkt. No. 30-6) ¶ 1.

Defendants "employed" plaintiffs within the meaning of 29 U.S.C. § 203(d). Compl. ¶ 25. Corporate defendants Salsa Con Fuego, SCF Management, and SCF Cedar have interrelated and unified operations. *Id.* ¶ 18. Individual defendants Nieves and Mangan are owners, operators, and managers of the corporate defendants, and set their payroll policies. *Id.* ¶ 19. Nieves and Mangan also own and operate Don Coqui Astoria, another business which is operated and marketed as a common enterprise with, and advertised on the same website as, Salsa Con Fuego. *Id.* ¶¶ 27–28.

Plaintiffs allege that defendants willfully failed to pay minimum wage and overtime premiums required under the FLSA and NYLL (by "shaving" plaintiffs' hours, failing to compensate them for non-tipped work performed before and after their shifts, and improperly taking tip credits); failed to pay overtime premiums required under the FLSA and NYLL; withheld defendants' tips in violation of the NYLL; failed to provide wage notices required under the NYLL; and failed to pay spread-of-hours premiums required under the NYLL. *Id.* ¶¶ 94–118.

With respect to the FLSA claims that are the subject of the motion before the Court, plaintiffs allege that defendants imposed corporate policies requiring employees to work "off the clock" before or after their shifts (sometimes entirely uncompensated), performing non-tip producing duties including cleaning, counting and organizing money earned during the night, organizing sales receipts, and waiting for a manager to reconcile tips and sales. *Id.* ¶¶ 67–73, 87. On the occasions when defendants did pay plaintiffs for this non-tipped work, they did so at the lower, tipped minimum wage rate. *Id.* ¶ 74. Defendants have a corporate policy of "shaving"

hours in order to avoid paying employees for work in excess of 40 hours per week. *Id.* 85–87. Plaintiffs further allege that they were required to pool tips against their will, and that, while cash tips were distributed among bartenders at the end of each night, credit card tips were distributed at the end of each week by paycheck, without supporting calculations or documentation, and a portion of those tips were improperly retained by managers. *Id.* ¶¶ 76–80, 82–83. Moreover, when cash registers were found to be "short" during reconciliation at the end of the night, defendants required plaintiffs to contribute their cash tips in order to make up the shortfall. *Id.* ¶ 81.

As a result of these corporate policies, plaintiffs allege that defendants violated their FLSA rights, and the rights of all other tip-eligible employees, by failing to pay wages due at the non-tipped minimum wage rate, failing to pay overtime wages for hours in excess of 40 hours per week, and by improperly withholding their tips. Pl. Mem. of Law, at 4.

## DISCUSSION

### I. Conditional Certification

#### A. Legal Standard

The FLSA provides that "any one or more employees" may bring an action against an employer "for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To become a party to such an action, an employee must file written consent in the court in which the action is brought. *Id.* "Although they are not required to do so by FLSA, district courts 'have discretion, in appropriate cases, to implement [§ 216(b) ] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

4

The Second Circuit has approved a two-step method for determining whether to exercise this discretion. *See Myers*, 624 F.3d at 554. First, in the step known as "conditional certification," the trial court may make an initial determination to send notice to potential opt-in plaintiffs, if the named plaintiffs make a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). At the second stage, which typically occurs after discovery is completed, the court determines whether the plaintiffs who have opted in are in fact "similarly situated" to the named plaintiffs and, if the record reveals that they are not, may "de-certify" the collective action and dismiss those plaintiffs' claims without prejudice. *Myers*, 624 F.3d at 555 (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008), and *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)).

During the initial "conditional certification" stage, the requirement of a "modest factual showing" cannot be satisfied solely by "unsupported assertions." *Myers*, 624 F.3d at 555. However, because purpose of this first stage is "merely to determine *whether* 'similarly situated plaintiffs' do in fact exist," plaintiffs have a low burden of proof. *Id.* (emphasis in original) (citing *Hoffmann*, 982 F. Supp. at 261; and *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991)). *Accord Damassia v. Duane Reade, Inc.*, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006) ("[A] plaintiff's burden at this preliminary stage is 'minimal.'") (quoting *Wraga v. Marble Lite, Inc.*, 2006 WL 2443554, at *1–2 (E.D.N.Y. Aug. 22, 2006)). A showing that plaintiffs "were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class" is a sufficient basis from which to

infer the "common policy" required for conditional certification at this stage. *Cortes*, 2015 WL 7076009, at *3 (citing *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007)). Documents properly considered in this inquiry "include plaintiffs' 'own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.'" *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 557–58 (S.D.N.Y. 2013) (quoting *Hamadou*, 915 F. Supp. 2d at 661)

In cases involving employees at multiple business locations, "courts consider whether the plaintiffs have made an adequate factual showing to support an inference that . . . a uniform policy or practice exists, and whether the locations share common ownership or management." *Trinidad*, 962 F. Supp. 2d at 558 (quoting *Hamadou*, 915 F. Supp. 2d at 662).

### B. Time Period

In this case, plaintiffs seek conditional certification of a group consisting of either "all current and former tip-eligible employees who were employed by Defendants in New York at any [time] since January 21, 2013" or "all current and former servers and bartenders employed by Defendants at any time since January 21, 2013." Pl. Mem. of Law, at 2, 20.

As an initial matter, "notice should generally be directed to those employed within three years of the date of the mailing of the notice," given that the FLSA's "three-year statute of limitations period for willful FLSA violations runs for each individual plaintiff until that plaintiff consents to join the action." *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012) (citing 29 U.S.C. § 255 and *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011). However, "because equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, 'with the understanding that challenges to the timeliness of individual

6

plaintiffs' actions will be entertained at a later date.'" *Winfield* 843 F. Supp. 2d at 410 (authorizing notice to potential opt-in plaintiffs employed by defendant within three years of the date the complaint was filed) (citing *Thompson v. World Alliance Fin. Corp.*, 2010 WL 3394188, at *7 (E.D.N.Y. Aug. 20, 2010), and *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 n.3 (S.D.N.Y. 2007)). The complaint in this case was filed on January 21, 2016. It is therefore appropriate for plaintiffs to include all potential collective action members employed at Salsa Con Fuego since January 21, 2013, with the understanding that defendants may challenge the timeliness of individual plaintiffs' claims in the future. *See Racey v. Jay-Jay Cabaret, Inc.*, 2016 WL 3020933, at *8 (S.D.N.Y. May 23, 2016).

### C. Uniform Policy or Practice

All five plaintiffs submitted declarations stating that, based on their own observations and discussions with other employees, including bartenders, servers, and bussers, they "know that Defendants' practices of requiring tipped employees to work extensive side work, failing to pay for non-tipped hours, and withholding a portion of gratuities were corporate policies that applied to all non-tipped employees." Decl. of Lisa Pabon (Dkt. No. 30-3) ¶ 16; Decl. of Samantha Mori (Dkt. No. 30-4) ¶15; Decl. of Kristina Evans ¶ 17. *Accord* Decl. of Angely Fernandez (Dkt. No. 30-5) ¶ 16 (alleging the same, and also that defendants' corporate policies included "shaving hours"); Decl. of Caroline Sanchez (Dkt. No. 30-2) ¶ 16 (same). Each declaration describes the declarant's typical shift schedule, hours worked, and experience with these policies during the time she was employed by defendants. To the extent the proposed class consists of bartenders, and bussers, these declarations satisfy the "modest showing that is required of [plaintiffs] at this preliminary stage: they were subjected to certain wage and hour practices at the defendants'

7

workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class." *Iglesias-Mendoza*, 239 F.R.D. at 368.

Conditional collective certification can be based solely on the personal observations of one plaintiff. *See Hernandez v. Bare Burger Dio Inc.*, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (granting conditional collective action certification of all tipped Bare Burger employees based on one employee's declaration, and collecting cases). In this case, five plaintiffs have all submitted declarations describing the same practices. In addition to personally experiencing these practices, Sanchez discussed them with coworkers including "Judy, Sady, Sophie[,] and Nina, who worked as bartenders." Sanchez Decl. ¶ 16. Mori discussed the practices with coworkers including "'Jeanette,' 'Judy,' 'Yonna,' and 'Sady,' who worked as bartenders." Mori Decl. ¶ 15. Pabon discussed the practices with "Judy, Sadiee, Jeanette, Natalie, Imani, Rebecca, and Yanna," who also worked as bartenders and were subjected to the same practices. Pabon Decl. ¶ 16. Fernandez discussed the practices with coworkers including "Kayla, Jose[,] and Peter, who worked as servers," and "bussers whose names [she does] not recall," all of whom were also subjected to the alleged practices. Fernandez Decl. ¶ 16. Evans discussed the practices with coworkers including "'Alex,' 'Judy,' Yonna,' Sophie[,]' and 'Sady,' who worked as bartenders, and 'Maya[]' and 'Rebecca,' who worked as servers." Evans Decl. ¶ 17.

While "[t]here is a 'consensus in this district that where a plaintiff bases an assertion of a common policy on observations of coworkers or conversations with them, [s]he must provide a minimum level of detail regarding the contents of those conversations or observations,'" plaintiffs are not required to provide "the times and dates" of the conversations, so long as a court "'can fairly infer' that other [employees] 'labored under similar working conditions and thus suffered the same violations of the FLSA.'" *Racey*, 2016 WL 3020933, at *4 (quoting *Reyes*

8

*v. Nidaja, LLC*, 2015 WL 4622587, at *3 (S.D.N.Y. Aug. 3, 2015), and *Guzman v. Three Amigos SJL Inc.*, 117 F. Supp. 3d 516, 525 (S.D.N.Y. 2015)). Plaintiffs have satisfied their minimal burden of showing that they are "similarly situated" to the other members of the proposed group, at least to the extent it consists of bartenders, servers, and bussers.

### D. Multiple Businesses

When a proposed collective action encompasses employees of multiple businesses or locations, the Court "must determine which [locations or businesses] had employees that were 'similarly situated' with regard to the allegedly unlawful overtime policies" before facilitating notice to those employees. *Trinidad*, 962 F. Supp. 2d at 557 (citing *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)). Even when locations or businesses share common ownership, plaintiffs must allege sufficient facts to support an inference of a common policy across all locations or businesses. *See Trinidad*, 962 F. Supp. 2d at 559–60 (declining to authorize notice to all Pret a Manger restaurant locations in New York City, or even to the full list of locations at which the named plaintiffs had worked, where plaintiffs failed to allege sufficient facts "supporting an inference of a common policy spanning the full subset" of those stores and their testimony seemed to describe inconsistent practices across stores); *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 356 (S.D.N.Y. 2008) (conditionally certifying group of employees at a pizza store where plaintiffs worked, but declining to certify employees at five other stores where the only evidence relating to those five stores were "generalized allegations of wrongdoing" regarding one of the stores, and hearsay statements of questionable reliability); *Lujan v. Cabana Mgmt., Inc.*, 2011 WL 317984, at *7–9 (E.D.N.Y. Feb. 1, 2011) (conditionally certifying group of employees at three New York restaurants based on declarations from workers representing each location, but declining to certify employees at three Florida restaurants under

9

the same ownership because the Court lacked "firsthand evidence of violations at the Florida restaurants during the limitations period"); *cf. Morris v. Lettire Const., Corp.*, 896 F. Supp. 2d 265, 270–71 (S.D.N.Y. 2012) (plaintiffs' allegations that they received "purely 'straight time' pay in the same distinctive manner . . . no matter where they worked or who supervised them" supported "a reasonable inference that plaintiffs' experiences reflected a company-wide policy").

Here, plaintiffs allege that Salsa Con Fuego and Don Coqui Astoria (as well as various other, unnamed businesses) are under common ownership. Compl. ¶ 27. They also allege that Salsa Con Fuego and Don Coqui Astoria are "operated and marketed as a common enterprise," including advertising on a single website, that "employees are freely interchangeable," and that defendants "engage in the same wage and hour practices and policies, and all employees are paid by the same payroll methods" at both businesses. *Id.* ¶¶ 27–28. However, only plaintiff Sanchez was employed at Don Coqui Astoria. Sanchez Decl. ¶ 1. While she "was aware that Defendant John Mangan was an owner of both locations" and "saw him frequently at both locations," her allegations of FLSA violations – including those in the complaint – appear to involve only her experiences during "the Sanchez Employment Period," which ran from "in or around October 2013 through on or about September 13, 2015," during which time she was employed only at Salsa Con Fuego. Compl. ¶¶ 51–54; Sanchez Decl. ¶¶ 1–4. Her employment at Don Coqui Astoria, which took place "when they first opened, in or around 2011," is not described further. Sanchez Decl. ¶ 1. The other plaintiffs do not claim any experience at any restaurant other than Salsa Con Fuego, nor do they claim even second-hand knowledge of any specific knowledge of policies or practices at any other business owned by any of the defendants. As plaintiffs themselves note in their memorandum of law, they "are similarly situated with the potential plaintiffs to whom they seek to send notice because they all worked in tip-eligible front-of-the-

house positions, *at the same restaurant/nightclub*, and were paid in the same manner pursuant to the same policies." Pl. Mem. of Law, at 2 (emphasis added).

### E. Conditional Certification is Appropriate

For the reasons set forth above, plaintiffs' motion for conditional certification will be granted to the extent it extends to current and former bartenders, servers, and bussers employed at Salsa Con Fuego since January 21, 2016.

### II. Production of Potential Opt-In Plaintiff Information

Plaintiffs also request that the Court direct defendants to produce, "in electronically readable form," the names, last known addresses, telephone numbers, and email addresses of all potential opt-in plaintiffs. Pl. Mem. of Law, at 2. Courts in this circuit "routinely grant . . . motions to compel production of the names and addresses of potentially similarly situated employees who may wish to 'opt-in' to a collective action" following conditional certification. *Anglada v. Linens 'N Things, Inc.*, No. 06 Civ. 12901, 2007 WL 1552511, at *7 (S.D.N.Y. Apr. 26, 2007) (collecting cases), *report and recommendation adopted* (May 22, 2007). Likewise, courts "commonly grant" requests for production of mailing addresses and dates of employment for potential opt-in plaintiffs. *Cortes*, 2016 WL 7076009, at *4. Plaintiffs' request for this information is appropriate.

With respect to the production of telephone numbers and email addresses, while courts in this District vary in their willingness to order production of this information, such methods may offer more efficient means of providing notice than first class mail. *See, e.g., Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 60 (S.D.N.Y. 2009) (Pauley, J.) (ordering defendants to produce a computer-readable list of the "name, last known mailing address, alternate address (if any), all known telephone numbers, and dates of employment" for potential opt-in plaintiffs); *Diatta v.*

*Iguana New York Ltd.*, 2016 WL 2865132, at *6 (S.D.N.Y. May 10, 2016) (Torres, J.) ("Courts routinely order discovery of names, addresses, and telephone numbers in FLSA actions."); *Racey*, 2016 WL 3020933, at *10 (Failla, J.) (ordering defendants to provide "a list of the names, addresses, telephone numbers, email addresses, and dates of employment for potential class members"); *Hernandez v. NGM Mgmt. Grp. LLC*, 2013 WL 5303766, at *5 (S.D.N.Y. Sept. 20, 2013) (Sweet, J.) (ordering defendants to produce "a computer-readable list of the names, addresses, compensation rates, telephone numbers, and dates of employment" for all potential opt-in plaintiffs); *cf. Cortes*, 2015 WL 7076009, at *4 (Engelmayer, J.) (ordering defendants to produce telephone numbers of former employees, despite plaintiffs' failure to "clearly explain[] the need for telephone numbers," as well as email addresses for those former employees for whom defendant lacked a working telephone number, but declining to order production of current employees' telephone numbers, because they would see notice posted at workplace). *But see Trinidad*, 962 F. Supp. 2d at 564 (declining to order production of telephone numbers where "[f]irst-class mail and in-store posting is sufficient to provide notice to potential opt-in class members"); *Tubiak v. Nielsen Co. (US), LLC*, 2016 WL 796861, at *4 (S.D.N.Y. Feb. 25, 2016) (Castel, J.) (ordering production of names and addresses only, and reserving decision on production of telephone numbers "for undeliverable mail"); *Iriarte v. Cafe 71, Inc.*, 2015 WL 8900875, at *6 (S.D.N.Y. Dec. 11, 2015) (McMahon, J.) (ordering production of names and addresses, and denying request for production of social security numbers, email addresses, and telephone numbers, subject to reconsideration if "many of the notice and consent forms are returned as undeliverable").

Email addresses and telephone numbers are efficient methods of providing notice, and in this day and age, they are often more effective than traditional mail. However, those potential

opt-in plaintiffs who are currently employed by defendants should not receive telephone calls concerning this action during working hours. Accordingly, defendants will be required to produce to plaintiffs' counsel the names, last known mailing addresses, and email addresses of all current and former bartenders, servers, and bussers employed at Salsa Con Fuego since January 21, 2013, as well as the last known telephone numbers for members of that group who are no longer employed by defendants.

### III.  Form, Method, and Timing of Notice

The final set of issues involves the form, method, and timing of the court-authorized notice to be sent to the potential opt-in plaintiffs. Plaintiffs request that the Court authorize a 60-day opt-in period following notice, approve their proposed English- and Spanish-language notice and consent forms, authorize plaintiffs to send those forms to potential opt-in plaintiffs by first class mail and email, and order defendants to post notice of the collective action and consent forms in a conspicuous location at Salsa Con Fuego. Pl. Mem. of Law, at 15–17. Plaintiffs also request that the Court authorize them to send a deadline reminder letter via the same methods. *Id.* at 18.

#### A. Content of Notice

"Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed," and court-authorized notice "serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Hoffmann–La Roche*, 493 U.S. at 172. As with the conditional certification inquiry itself, a court evaluating the degree to which court-authorized notice is appropriate "does not resolve factual disputes, decide ultimate issues on the merits, or make credibility

determinations." *Davis v. Abercrombie & Fitch Co.*, 2008 WL 4702840, at *9 (S.D.N.Y. Oct. 23, 2008) (citing *Lynch*, 491 F. Supp. 2d at 368–69).

"Neither the [FLSA] statute, nor the courts, specifically outline what form court-authorized notice should take, nor what provisions the notice should contain." *Lee v. ABC Carpet & Home*, 2008 WL 2073932, at *1 (S.D.N.Y. May 9, 2008). "Under the FLSA, the content of the notice is left to the court's discretion." *Delaney*, 261 F.R.D. at 59; *accord Lopez v. JVA Indus., Inc.*, 2015 WL 5052575, at *4 (S.D.N.Y. Aug. 27, 2015) (noting that the FLSA "vests the district court with broad discretion" with respect to the notice of pending litigation to be provided to potential opt-in plaintiffs).

"The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide 'accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate.'" *Whitehorn*, 767 F. Supp. 2d at 450 (quoting *Fasanelli*, 516 F. Supp. 2d at 323. To that end, notice generally should contain:

> a description of some or all of the following: (1) the purpose of the notice; (2) the nature of the lawsuit filed and the relief being sought; (3) the proposed class composition; (4) the legal effect of joining the lawsuit; (5) the fact that the court has not taken any position regarding the merits of the lawsuit; (6) how to join the lawsuit; (7) the purely voluntary nature of the decision and the legal effect of not joining the lawsuit; (8) the prohibition against retaliation; and (9) the relevant contact information for any inquiries.

*Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 566 (S.D.N.Y. 2012) (citing *ABA, The Fair Labor Standards* Act, 19-78-79 (Ellen C. Kearns et al. eds., 2d ed. 2010)). Courts in this District have also held that notice should include a tenth category of information: a warning that opt-in plaintiffs may be required to provide information, appear for a deposition, and testify in

court. *See Salomon*, 847 F. Supp. 2d at 567 (modifying proposed notice to explain such a possibility) (citing *Lee*, 2008 WL 2073932, at *2–3).

Plaintiffs' proposed notice contains an explanation of all categories of information listed above, including that "you may be asked to give testimony and information about your work for Defendants." Proposed Notice (Dkt. No. 30-7), at 3. It therefore provides sufficient accurate and timely notice of the action, with one exception. The proposed notice is directed to, and states that potential collective action members include, "[a]ll current and former tip-eligible employees who worked for Salsa Con Fuego at any time between January 21, 2013 and the present." *Id.* at 1–2. For the reasons previously stated, this language should be modified to replace "tip-eligible employees," wherever that phrase appears, with "bartenders, servers, and bussers."

Plaintiffs also propose sending Spanish-language versions of the notice, consent, and deadline reminder forms. "Generally, courts permit notice to be 'translated into the mother tongue of non-English speaking groups of potential plaintiffs.'" *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 76 (E.D.N.Y. 2016) (quoting *Colon v. Major Perry Street Corp.*, 2013 WL 3328223, at *8 (S.D.N.Y. July 2, 2013)); *accord Sanchez v. El Rancho Sports Bar Corp.*, 2014 WL 1998236, at *5 (S.D.N.Y. May 13, 2014) (Spanish-language notice forms permitted) (citing *Moung Su Kim v. Kap Sang Kim*, 2010 WL 2854463, at * 1 (E.D.N.Y. July 19, 2010)). Consequently, plaintiffs may send Spanish-language translations of all notice and consent forms.

### B. 60-Day Opt-in Period

The 60-day opt-in period requested by plaintiffs, following conditional certification, is "consistent with FLSA practice" in this Circuit. *Whitehorn*, 767 F. Supp. 2d at 451–52 (reducing FLSA notice period from 90 to 60 days); *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 566–67 (S.D.N.Y. 2015) ("[c]ourts in this Circuit routinely restrict the opt-in period to sixty

days") (quoting *Fa Ting Wang v. Empire State Auto Corp.*, 2015 WL 4603117, at *11 (E.D.N.Y. July 29, 2015)). That aspect of the request is also approved.

### C. Methods of Notice

Plaintiffs propose that the notice and consent forms be mailed to potential opt-in plaintiffs via first class mail and email, and that defendants also post them conspicuously at Salsa Con Fuego. As discussed above, first class mail and email may both serve as efficient means of ensuring that potential opt-in plaintiffs receive timely notice, and are therefore approved. *See Delaney*, 261 F.R.D. at 60 (ordering production of email and mailing addresses for the purpose of sending notice).

With respect to posting at Salsa Con Fuego, courts "routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." *Whitehorn*, 767 F. Supp. 2d at 449 (requiring posting of notice in defendants' restaurants over defendants' objections that such postings would unnecessarily disturb their business) (citing *Malloy v. Richard Fleischman & Assocs. Inc.*, 2009 WL 1585979, at *4 (S.D.N.Y. June 3, 2009), and *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 96 (E.D.N.Y. 2010)); *Trinidad*, 962 F. Supp. 2d at 564 (ordering defendants to post notice "in a non-public area" of six restaurant locations, noting that "Courts in this Circuit frequently approve posting in the workplace" and collecting cases).

Consequently, defendants will be required to post the notice of this action, as well as opt-in forms, in a conspicuous, non-public location at Salsa Con Fuego. This method, along with mailing and emailing the notice and consent forms, "strikes the appropriate balance between ensuring adequate notification, while also minimizing any disturbance to [the] workplace." *Sherrill v. Sutherland Global Servs., Inc.*, 487 F. Supp. 2d 344, 351 (W.D.N.Y. 2007).

### D. Reminder Notices

Finally, plaintiffs request permission for plaintiffs' counsel to send a deadline reminder notice prior to the end of the 60-day opt-in window. Pl. Mem. of Law, at 18. Other courts in this District have found it appropriate for plaintiffs to send a reminder notice in FLSA cases, particularly when there is no objection from defendants. *See, e.g.*, *Lopez*, 2015 WL 5052575, at *4–5 (collecting cases); *Chhab v. Darden Restaurants, Inc.*, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) ("Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice is appropriate." (collecting cases)); *cf. Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 357–58 (E.D.N.Y. 2012) (denying request for reminder notice without prejudice to its renewal if plaintiffs explained why such notice was necessary under the circumstances, where defendants objected to reminder notices and plaintiffs failed to respond). Mailing of a reminder notice is therefore appropriate in this case.

### CONCLUSION

For the foregoing reasons, plaintiffs' motion for conditional collective action certification is GRANTED as to all bartenders, servers, and bussers employed at Salsa Con Fuego since January 21, 2013. It is hereby ORDERED that: (1) plaintiffs shall submit a revised version of the proposed Notice, Consent to Join, and Reminder Letter, reflecting that modification and any other appropriate modifications, for final review within seven days of the date of this Order; (2) to the extent not previously done, defendants shall provide plaintiffs' counsel with the names, last known addresses, and email addresses of all bartenders, servers, and bussers employed at Salsa Con Fuego since January 21, 2013 (and the last known telephone numbers of the members of that group who are no longer employed by defendants) within 21 days of the date of this

Order; (3) plaintiffs shall mail and email the final Notice and Consent to Join no later than 30 days after the Court issues final authorization of the proposed forms, and may mail and email the Reminder Letter thereafter; and (4) promptly upon final authorization of the proposed forms, defendants shall post a copy of the Notice and Consent to Join in a conspicuous, non-public location at Salsa Con Fuego, where it shall remain through the end of the opt-in period specified on the Notice.

Dated: New York, New York
August 24 2016

SO ORDERED.

_____
BARBARA MOSES
United States Magistrate Judge